IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



KIRK HOWARD,

    Plaintiff,

v.                             Civil Action No. 3:19CV133

DORIS K. JACOBS,

    Defendant.

**MEMORANDUM OPINION**

Kirk Howard, a Virginia inmate proceeding *pro se* filed this 42 U.S.C. § 1983 action. This action proceeds on Howard's Particularized Complaint. ("Complaint," ECF No. 13.) In February of 2018, Howard was incarcerated in the Western Tidewater Regional Jail ("WTRJ"). (Id. at 1.) On February 22, 2018, Howard fell and injured his knee, hip, and back. (Id.) Howard contends that in the ensuing months, Doris K. Jacobs, Director of Nursing, failed to provide him with appropriate medical care for his injuries. (Id. at 1-3.) Jacobs has moved for summary judgment. (ECF No. 21.) Howard has responded. (ECF No. 26.) For the reasons that follow, Jacobs's Motion for Summary Judgment (ECF No. 21) will be granted.

I.    **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a

jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of her Motion for Summary Judgment, Jacobs submitted, inter alia: (1) her own affidavit ("Jacobs Aff.," ECF No. 23-1); (2) copies of Howard's medical records ("Medical Records," ECF No. 23-2);[1] and copies of Howard's grievances ("Grievances," ECF No. 23-3).[2]

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Howard did not do so. Instead, Howard directs the Court to other material in the record that he

---

[1] The Court employs the pagination assigned to Howard's Medical Records and Grievances by the CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from the parties' submissions.

[2] In her listing of undisputed facts, Jacobs simply cites to "Grievances" or "Medical Records" without providing any pinpoint citation to the particular document that supports the fact. Counsel for Jacobs is notified that such a practice is unacceptable and any future motion for summary judgment that is similarly deficient will be summarily denied. In this instance, however, the record is sufficiently clear to permit verification of the asserted facts so no purpose would be served by rejecting the motion for this failure.

3

asserts supports his contention that he was denied adequate medical care.

## II. UNDISPUTED FACTS

Jacobs was and is the Director of Nursing at WTRJ. (Jacobs Aff. ¶ 1.) In that role, Jacobs never directly provided medical care to Howard. (Id. ¶ 6.) Rather, Jacobs triaged "his sick call requests, refer[red] him to the WTRJ doctor when necessary, and respond[ed] to his grievances." (Id. ¶ 7.)

On February 22, 2018, Howard fell and hurt his back and knee. (Compl. 1.) The medical staff provided Howard with Motrin, ice, a muscle rub, and ordered X-rays of Howard's lower back and knee. (Medical Records 6.)

On February 26, 2018, Howard submitted a grievance complaining of knee and back pain and asking to see Dr. Taylor. (Grievances 3.) On March 1, 2018, Jacobs responded, "I see that the medical doctor has prescribed something stronger for you today. Please allow time for this medication to work." (Id. at 4.) Also on March 1, 2018, Howard was seen by Dr. Taylor. (Medical Records 12.) Dr. Taylor prescribed Prednisone and Tramadol. (Id. at 1-2.)

On March 3, 2018, Howard submitted a grievance asking to see the medical staff related to his high blood pressure caused by the pain of his injuries. (Grievance 5.) On March 6, 2018, in response

4

to that grievance, Jacobs informed Howard that he was on the list to see the doctor. (Id. at 6.) On March 22, 2018, Howard submitted another request to be seen by the doctor related to the pain he was experiencing. (Id. at 7.) On March 26, 2018, Jacobs responded, "you are on the list the see the medical doctor. I will get a new order to initiate a script for pain/comfort. You were already on the list prior to submitting this grievance, but the doctor's list does fluctuate according the severity of the cases." (Id. at 9.)

On April 7, 2018, Dr. Taylor examined Howard, ordered a CT scan of Howard's left knee, and continued the nonsteroidal anti-inflammatory drug ("NSAID") therapy. (Medical Records 4, 12.) On April 19, 2018, a CT scan of Howard's knee was performed at Sentara Obici Hospital and the results were reviewed by Dr. Taylor on April 26, 2018. (Id. at 20.) The report of the CT scan noted, "Unremarkable CT, left knee. No evidence discrete fracture. Bone contusions and internal derangement e.g. meniscal or cruciate ligament tears not detected by CT." (Id. at 21.) The report also indicated the presence of "[s]everal tiny subcortical foci lucency." (Id. at 20.)

On May 8, 2018, Howard submitted a request to see a doctor about his knee and to "see my MRI test." (Id. at 19.)

On August 31, 2018, Howard again was seen by Dr. Taylor. (Id. at 13.) Dr. Taylor suspected that Howard had an "internal strain

5

(left knee)." (Id.) On September 5, 2018, Dr. Taylor referred Howard to an outside orthopedic specialist. (Id. at 13-14.) "The WTRJ procedure for outside medical consultations requires the jail physician to formulate a written request. Once approved, the WTRJ superintendent's office makes the appointment. Following Dr. Taylor's request for an orthopedic referral dated September 5, 2018, [Howard] was scheduled for an outside appointment on September 26, 2018." (Jacob's Aff. ¶ 9.) However, on September 21, 2018, before the scheduled appointment, Howard was transferred to the Virginia Department of Corrections ("VDOC"). (Id. ¶ 10.) Once Howard was transferred to the VDOC, VDOC medical personnel took over Howard's medical care and WTRJ personnel had no involvement in his medical care. (Id. ¶ 11.)

## III. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Howard must make a sufficient showing that a jury could find that Jacobs acted with deliberate indifference to his serious medical needs. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th

6

Cir. 2008) (quoting <u>Henderson v. Sheahan</u>, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S. at 837. <u>Farmer</u> teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." <u>Johnson v. Quinones</u>, 145 F.3d 164, 168 (4th Cir. 1998) (citing <u>Farmer</u>, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were

7

'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-04).

In perspective of the record, it is difficult to perceive why Howard believes that Jacobs failed to provide adequate medical care. While Howard complains that Jacobs failed to ensure that he was seen by an orthopedic specialist, the record reveals that Howard was scheduled to be seen by orthopedic specialist on September 26, 2018. Howard, however, was transferred to the VDOC on September 21, 2018.[3] This record refutes Howard's contention that the lack of an orthopedic appointment was caused by Jacob's deliberate indifference.

Additionally, Howard complains that, in March and April of 2018, the medical staff ignored his complaints that he was in pain. The record, however, reflects that neither Jacobs nor Dr. Taylor

---

[3] In his Complaint, Howard notes that, when he was transferred to the VDOC, the physician at the VDOC indicated Howard's medical file did not contain a notation reflecting that Howard had been referred to an orthopedic specialist. (Compl. 2.) The medical records, however, clearly reflect that there was a referral to an orthopedic specialist.

8

stood indifferent to Howard's complaints. Jacobs ensured that Howard was seen by the doctor. Dr. Taylor, in turn, responded to Howard's complaints by modifying Howard's prescription of pain medication. The fact that the modification did not eliminate Howard's pain does not demonstrate Jacobs acted with deliberate indifference.[4]

On this record, Howard's Eighth Amendment claim fails and must be dismissed. The Motion for Summary Judgment (ECF No. 21) will be granted. The action will be dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to Howard and counsel of record.

It is so ORDERED.

/s/ RSP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 2f, 2020

---

[4] "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain." Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." Id. So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. See Brown v. Harris, 240 F.3d 383, 389-90 (4th Cir. 2001).